the Cole, as well as federal maritime wrongful death law as recognized by the United States Supreme Court in Moragne v. State Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L. Ed. 2d 339 (1970). Sudan contends that Plaintiffs' *only* cause of action arises under the Death on the High Seas Act of 1920 (DOHSA), 46 U.S.C. app. §§ 761-767, that "supplemental" claims for emotional distress or wrongful death are precluded by DOHSA and therefore must be dismissed, and that Plaintiffs' claims for non-pecuniary damages are not recoverable under DOHSA.[12]

On February 15, 2007, this Court held a hearing on the choice of law question. Sudan appeared at the hearing but did not participate. At the hearing, Plaintiffs argued that DOHSA was inapplicable because a foreign state is not a "person" under the statute and Congress did not intend the statute to apply to foreign sovereigns. Pl.'s Am. Mem. 2-6. At the Court's invitation, however, Plaintiffs filed a Fourth Amended Complaint adding claims under DOHSA and stating separate claims for IIED and maritime wrongful death. Although Sudan was in default, on February 27, 2007, it filed a motion to dismiss Plaintiffs' IIED and wrongful death claims for failure to state a claim upon which relief can be granted on grounds that they were precluded by DOHSA and did not satisfy DOHSA's three-year statute of limitations. 46 U.S.C. app. § 763a; Fed. R. Civ. P. 12(b)(6). The Court, ruling from the bench during the final pretrial hearing, denied Sudan's motion but reserved ruling on which substantive law applied to this action. At trial, Plaintiffs raised the matter again, urging the Court to rule that DOHSA's provision limiting damages to pecuniary losses is inapplicable to terrorism cases such as this, and that DOHSA should not be read to preclude recovery of non-pecuniary damages for emotional distress despite

---

[12]Sudan first made this argument in its August 3, 2005, motion to dismiss. The Court took it under advisement pending a ruling by the Court of Appeals on jurisdiction.

the case law interpreting DOHSA as an exclusive remedy. Following trial, Plaintiffs filed two "supplemental" memoranda in support of their argument.

The Court is faced with three overarching questions: (1) What choice of law rules apply to claims against a state sponsor of terrorism under § 1605(a)(7)?; (2) What substantive law provides Plaintiffs with a cause of action against Sudan?; and (3) Which law provides the applicable statute of limitations in cases brought under § 1605(a)(7)? Because this is the first case arising under the terrorism exception in this Circuit, and because the case law under this exception is still developing generally, the Court begins with a discussion of the choice of law principles to be applied in cases arising under § 1605(a)(7).

1.      Causes of Action Under the FSIA

The United States Court of Appeals for the District of Columbia Circuit held in Cicippio-Puleo that the FSIA is a jurisdictional statute and "neither 28 U.S.C. § 1607(a)(7) nor the Flatow Amendment [to the FSIA],[13] nor the two considered in tandem, creates a private right of action against a foreign government." 353 F.3d at 1033. Prior to Cicippio-Puleo, district courts had held or assumed that the terrorism exception or the Flatow Amendment provided the standard of liability against which a foreign state's actions should be measured. Id. at 1032 (citing cases). Cicippio-Puleo clarified that § 1605(a)(7) "merely waives the immunity of a foreign state without creating a cause of action against it." 353 F.3d at 1033. The liability of a foreign state

---

[13]The Flatow Amendment, enacted five months after the enactment of § 1605(a)(7), created a private right of action for conduct described in § 1605(a)(7) against "an official, employee, or agent of a foreign state" who was "acting within the scope of his or her office, employment, or agency . . . ." Pub. L. No. 104-208; Div. A, Title I, § 101(c), 110 Stat. 30009-172 (1996) (codified at 28 U.S.C. § 1605 note). See Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 12 (D.D.C. 1998).

whose immunity has been abrogated under any of the exceptions in § 1605 is determined according to § 1606, which provides: "As to any claim for which a foreign state is not entitled to immunity under section 1605 or section 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 1606; see First Nat'l City Bank v. Banco Para El Cercio Exterior de Cuba, 462 U.S. 611, 620, 103 S.Ct. 2591, 2597, 77 L. Ed. 2d 46 (1983) ("The language and history of the FSIA clearly establish that the Act was not intended to affect the substantive law determining the liability of a foreign state or instrumentality . . . ."). Thus, a plaintiff proceeding against a state sponsor of terrorism under § 1605(a)(7) "must identify a particular cause of action arising out of a specific source of law." Acree v. Republic of Iraq, 370 F.3d 41, 59 (D.C. Cir. 2004) (holding the "generic common law" to be insufficient); see also Blais, 459 F. Supp. 2d at 54 (holding that § 1606 acts as a "pass-through" to substantive causes of action).

In Dammerell, the district court sought to answer a question left unresolved after Cicippio-Puleo and Acree, namely what "particular causes of action . . . may be brought against a foreign state in a case proceeding under section 1605(a)(7)." 2005 WL 756090 at *11. After a lengthy examination of the text, structure, and legislative history of §§ 1605(a)(7) and 1606, and a comparison to the analogous statutory scheme of the Federal Tort Claims Act, the Dammerell court concluded that "the causes of action that may be brought against the foreign state . . . include any claims that can be brought against a private individual in like circumstances," including claims arising under "state common and statutory law, federal statutory law, and even the law of a foreign state." Id. at *14. The court continued, "Whether any of these sources will furnish a cause of action in a particular case will depend on several factors, including the

governing choice of law analysis, . . . and at least in the context of federal statutory claims, a careful inquiry into congressional intent . . . . The crucial point, however, is that there is nothing in section 1605(a)(7) that displaces the prevailing rule that a plaintiff may bring existing causes of action through section 1606 against foreign states." Id. Following Cicippio-Puleo and Acree, the United States District Court for the District of Columbia has uniformly held that the state common or statutory laws of the state of the plaintiff's domicile may be used to determine the liability of foreign states under the terrorism exception. See, e.g., Blais, 459 F. Supp. 2d at 54-55 (applying state laws of battery and IIED); Reed v. Islamic Republic of Iran, 439 F. Supp. 2d 53, 65-68 (D.D.C. 2006) (Massachusetts law); Price v. Socialist People's Libyan Arab Jamahiriya, 384 F. Supp. 2d 120, 132-34 (D.D.C. 2005) (state law of assault, battery, and IIED); see also Virtual Dev. & Def. Int'l, Inc. v. Republic of Moldova, 133 F. Supp. 2d 9, 14 (D.D.C. 2001) ("[A]s a general matter, state substantive law is controlling in FSIA cases."). This precedent makes clear that a plaintiff proceeding against a state sponsor of terrorism under § 1605(a)(7) may bring a cause of action under state law, federal statutes, or, where appropriate, foreign law, as long as he or she "identif[ies] a particular cause of action arising out of a specific source of law." See Acree, 370 F.3d at 59.

The first step in a choice of law analysis is determining which choice of law rules to apply. In FSIA actions, courts are divided as to whether to apply the forum state's choice of law rules or federal common law. Compare Chuidian v. Philippine Nat'l Bank, 976 F.2d 561, 564 (9th Cir. 1992) and Harris v. Polskie Linie Lotnicze, 820 F.2d 1000, 1003 (9th Cir. 1987) (federal common law); with Barkanic v. Gen. Admin. of the Civil Aviation of the People's Republic of China, 923 F.2d 957, 960-61 (2d Cir. 1991) (finding that "forum law provides the

proper choice of law rules for FSIA cases"); see also 14A Charles Alan Wright, Arthur R.

Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3662, p. 321 (3d ed. 1998)

("[T]here is no clear understanding as to whether the forum state's choice-of-law rules should

apply or whether federal common law should govern an action against a foreign state or

instrumentality thereof.").

This case is unlike any other before it because it arose out of an attack against a U.S.

warship in foreign territorial waters. The parties agree that the appropriate choice of law

principles are those applicable to maritime torts derived from the United States Supreme Court's

opinion in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L. Ed. 1254 (1953) and its

progeny. Lauritzen set forth "several factors which, alone or in combination, are generally

conceded to influence choice of law to govern a tort claim, particularly a maritime tort

claim . . . ." 345 U.S. at 583, 73 S.Ct. at 928; see also Hawkspere Shipping Co., Ltd. v. Intamex,

S.A., 330 F.3d 225, 234 (4th Cir. 2003) (holding that Lauritzen factors are to be applied by

federal courts sitting in admiralty in the absence of a valid contractual choice of law). "Under

Lauritzen, a court must consider seven factors in determining the governing law for a particular

dispute: (1) the place of the wrongful act, if any; (2) the law of the flag; (3) the domicile of the

plaintiff; (4) the domicile of the shipowner; (5) the place of the contract; (6) the inaccessibility of

a foreign forum; and (7) the law of the forum." Id. (citing Lauritzen, 345 U.S. at 583-92, 73

S.Ct. at 932). The law of the flag is of "cardinal importance" and "supersedes the territorial

principle . . . because [a ship] 'is deemed to be a part of the territory of that sovereignty (whose

flag it flies), and not to lose that character when in navigable waters within the territorial limits

of another sovereignty.'" Lauritzen, 345 U.S. at 584-85, 73 S.Ct. at 929-30 (quoting United

States v. Flores, 289 U.S. 137, 155-159, 53 S.Ct. 580, 584-86, 77 L. Ed. 1086 (1933)); see also

Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 308, 90 S.Ct. 1731, 1734, 26 L. Ed. 2d 252 (1970)

("[T]he flag that a ship flies may, at times, alone be sufficient."). The place of the wrongful act

escapes easy definition because the wrongful acts occurred in Sudan, Yemen, and the Port of

Aden. Yet while the first factor is ambiguous, the remaining factors point overwhelmingly

towards the law of the United States. This case involves an act of terrorism against an American

warship flying the flag of the United States in which seventeen U.S. nationals were killed. The

courts of Yemen and Sudan are plainly inaccessible to Plaintiffs, all of whom are themselves

U.S. nationals and reside in the United States. Accordingly, United States law, rather than

foreign law, supplies the rule of decision.

      2.      **Death on the High Seas Act**

The next question is whether Plaintiffs' cause of action is based on a federal statute, i.e.

DOHSA, federal maritime law, state common law or state statutes, or some combination thereof.

Although many § 1605(a)(7) claims against foreign state sponsors of terrorism since Cicippio-

Pulco have been based on state laws, courts have applied federal statutes against foreign states

whose immunity was lifted pursuant to one of the exceptions in § 1605. See, e.g., Southway v.

Cent. Bank of Nigeria, 198 F.3d 1210, 1216 (10th Cir. 1999) (federal Racketeering Influenced

and Corrupt Organizations Act statute enforceable against a foreign state through the FSIA);

Mukaddam v. Permanent Mission of Saudi Arabia, 111 F. Supp. 2d 457, 470 (S.D.N.Y. 2000)

(foreign state "is liable under Title VII [of the Civil Rights Act of 1964] in the same manner and

to the same extent as a private employer would be in like circumstances"); Outboard Marine

Corp. v. Pezetel, 461 F. Supp. 384, 395-96 (D. Del. 1978) (suit against foreign government-

controlled entity under antitrust laws is cognizable through "commercial activity" exception of

the FSIA, 28 U.S.C. § 1605(a)(2)). As the court in Dammerell recognized, whether a particular

federal statute may be invoked against a foreign state is an "inherently delicate question,

requiring a court to assess Congress's intent across several statutes: the federal statute giving rise

to the cause of action; the relevant waiver of sovereign immunity in section 1605; and section

1606 itself." 2005 WL 756090 at *28.

The Death on the High Seas Act, 46 U.S.C. app. § 761 et seq. (reorganized and restated at

46 U.S.C. § 30301-30308), was enacted in 1920 in order to provide "a uniform and effective

wrongful death remedy for survivors of persons killed on the high seas." Offshore Logistics,

Inc. v. Tallentire, 477 U.S. 207, 214, 106 S.Ct. 2485, 2490, 91 L. Ed. 2d 174 (1986).[14] Section

761(a) of the Act, as it existed at the time of the events giving rise to this suit, provides:

> [W]henever the death of a person shall be caused by wrongful act, neglect, or
> default occurring on the high seas beyond a marine league from the shore of any
> State, or the District of Columbia, or the Territories or dependencies of the United
> States, the personal representative of the decedent may maintain a suit for damages
> in the district courts of the United States, in admiralty, for the exclusive benefit of
> the decedent's wife, husband, parent, child, or dependent relative against the vessel,
> person, or corporation which would have been liable if death had not ensued.

46 U.S.C. app. § 761(a). In enacting DOHSA, Congress repudiated the preexisting rule in The

Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L. Ed. 358 (1886), that no federal statute or general

federal maritime law existed that afforded a wrongful death cause of action to the survivors of

persons killed beyond state territorial waters. See The Hamilton, 207 U.S. 398, 404-05, 28 S.Ct.

133, 134-35, 52 L. Ed. 264 (1907) (pre-DOHSA case applying state wrongful death statutes to

---

[14]Congress repealed and recodified Title 46 effective October 6, 2006. Pub. L. No. 109-304, 120 Stat. 1485, 1512 (2006). A modified DOHSA is now at 46 U.S.C. § 30301-30308. Because the events at issue occurred in 2000, the version of DOHSA then in effect is applicable.

deaths on the high seas). DOHSA was intended to remedy "[t]he void that existed in maritime

law up until 1920[:] the absence of any remedy for wrongful death on the high seas[.]"

Moragne, 398 U.S. at 398, 90 S.Ct. at 1786 (overruling The Harrisburg); see also H.R. Rep. No.

674, 66th Cong., 2d Sess., 3-4 (1920).

Whether DOHSA may be invoked against a foreign state whose immunity has been

abrogated under the FSIA is evidently an issue of first impression. The Court is unaware of a

single case in which a foreign state was found liable in wrongful death under DOHSA, and no

court has directly addressed whether such claims are cognizable.

To answer this question, the Court begins with the plain text of the statute. By its terms,

DOHSA is limited to circumstances where death stems from a "wrongful act, neglect or default"

which "occur[red] on the high seas beyond a marine league from the shore of any State . . . ." 46

U.S.C. app. § 761. The class of defendants is limited to "the vessel, person, or corporation

which would have been liable if death had not ensued." Id. The class of beneficiaries is limited

to the decedent's "wife, husband, parent, child, or dependent relative," id., and damages are

limited to the "pecuniary loss sustained by the persons for whose benefit the suit is brought"

unless death results from a commercial aviation accident. Id. §§ 761(b), 762.

Plaintiffs concede that DOHSA's geographic scope, as interpreted, includes foreign

territorial waters and that the Port of Aden in Yemen falls within this scope. See, e.g., Howard

v. Crystal Cruises, 41 F.3d 527, 529-30 (9th Cir. 1994) (territorial waters of Mexico are "high

seas" under DOHSA); Azzopardi v. Ocean Drilling & Exploration Co., 742 F.2d 890, 892-94

(5th Cir. 1984) (English Channel); Mancuso v. Kimex, Inc., 484 F. Supp. 453, 455 (S.D. Fla.

1980) (Jamaican waters); see also 2 Benedict on Admiralty § 81b, pp. 7-7–7-8 n.18 (2007) ("It

appears to be settled that the term 'high seas' within the meaning of DOHSA is not limited to international waters, but includes the territorial waters of a foreign nation as long as they are more than a marine league away from any United States shore."). Plaintiffs, correctly in the Court's view, make no attempt to argue that terrorism falls outside the Act. Although this appears to be the first case under DOHSA involving material support of terrorism, such conduct certainly constitutes a "wrongful act" within the plain meaning of the term in § 761. For decades courts have applied the Act whenever death occurs on the high seas, whether caused by negligence or unseaworthiness, see, e.g., Zicherman v. Korean Air Lines Co., Ltd., 516 U.S. 217, 116 S.Ct. 629, 133 L. Ed. 2d 596 (1996) (DOHSA claim against airline brought by survivors of passenger killed when airline was shot down over Sea of Japan in Soviet missile attack); Whitaker v. Blidberg-Rothchild Co., 195 F. Supp. 420, 421-23 (E.D. Va. 1961) (vessel and its owner liable for death of drowned seaman); Kuntz v. Windjammer Barefoot Cruises, Ltd., 573 F. Supp. 1277, 1282 (D. Pa. 1983) (cruise company liable for fatal scuba-diving accident on high seas), or even intentional conduct, see, e.g., Bowoto v. Chevron Corp., Case No. C 99-02506, 2006 WL 2455761 at *5 (N.D. Cal. Aug. 22, 2006) (DOHSA "clearly" applied to a claim brought on behalf of Nigerian individuals allegedly killed by the Nigerian military because the deaths "occurred [on an oil drilling platform] off the Nigerian coast and well over one marine league from U.S. shore"); The Samnanger, 298 F. 620, 622 (D. Ga. 1924) (homicide). The circumstances of this case thus fall squarely within the ambit of DOHSA.

Plaintiffs' sole argument is that foreign states are not proper defendants under DOHSA. But this argument overlooks contrary precedent in this and other jurisdictions, relies on inapplicable cases, and is premised on a misapplication of the FSIA and the terrorism

exception.[15]  First, Plaintiffs' argument that a foreign state is not a "person" under DOHSA is

belied by the fact that the United States has been consistently subject to liability for wrongful

death on the high seas under DOHSA since the enactment in 1946 of the Federal Tort Claims

Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., which waived the United States' immunity

for actions in tort.  See, e.g., United States v. Gavagan, 280 F.2d 319, 321 (5th Cir. 1960)

(holding United States liable under DOHSA through the FTCA for deaths resulting from

negligent rescue efforts on the high seas); Blumenthal v. United States, 189 F. Supp. 439, 446-47

(E.D. Pa. 1960) ("In the same manner as a private person is liable under the Death on the High

Seas Act, so, too, is the Government under the Federal Tort Claims Act."); Moran v. United

States, 102 F. Supp. 275, 279 (D. Conn. 1951) (holding that FTCA extended the right of action

created by DOHSA to claims against the United States for personal injury and deaths on the high

seas); see also Roberts v. United States, 498 F.2d 520, 525-26 (9th Cir. 1974) (noting that prior

to 1960 amendments to Suits in Admiralty Act, 46 U.S.C. §§ 741 et seq., FTCA waived

sovereign immunity for claims brought under general maritime law and DOHSA).  As the

Supreme Court has noted:

> As enacted in 1920, [DOHSA] provided a remedy against private parties but
> contained no waiver of sovereign immunity.  That changed with the enactment
> of the FTCA, which waived the sovereign immunity of the United States for
> claims arising on the high seas under the DOHSA and the general maritime
> law.

Smith v. United States, 507 U.S. 197, 208, 113 S.Ct. 1178, 1185, 122 L. Ed. 2d 548 (U.S. 1993);

see also Roberts, 498 F.2d at 525 n.8 ("The DOHSA merely creates a cause of action for

---

[15]That Plaintiffs amended their Complaint to add claims under DOHSA largely renders
this argument moot.  The Court addresses it here for the sake of clarity and because Plaintiffs
raised it again in their supplemental briefs following trial.

wrongful maritime death where none previously existed; the act does not contain any provision waiving sovereign immunity."). Congress presumably was aware of these cases against the United States in 1976 when it enacted the FSIA, which lifted foreign sovereign immunity for certain categories of cases much the same way as the FTCA lifted the United States' immunity in certain tort cases. See St. Louis, I.M. & S. Ry. Co. v. United States, 251 U.S. 198, 207, 40 S.Ct. 120, 122, 64 L. Ed. 225 (1920) ("[C]ongress must be presumed to have known of its former legislation . . . and to have passed the new laws in view of the provisions of the legislation already enacted."). In enacting the FSIA, Congress prescribed "when and how parties can maintain a lawsuit against a foreign state or its entities in the courts of the United States and . . . when a foreign state is entitled to sovereign immunity." H. R. Rep. No. 94-1487, 94th Cong., 2d Sess. at 6, as reprinted in 1976 U.S.C.C.A.N. 6604; see Permanent Mission of India to the United Nations v. City of New York, ----U.S.----, ----, 127 S.Ct 2352, 2357 (2007) ("In enacting the FSIA, Congress intended to codify the restrictive theory's limitation of immunity to sovereign acts."); Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 488, 103 S.Ct. 1962, 1968, 76 L. Ed. 2d 81 (1983) (the Act "codifies, as a matter of federal law, the restrictive theory of sovereign immunity"). Prior to the FSIA, a waiver of sovereign immunity was necessary before a suit against a foreign state could have been brought, and courts deferred to the suggestions of the U.S. Department of State on whether to take jurisdiction over a particular suit. See id. at 486, S.Ct. at 1967 (citing The Schooner Exchange v. M'Faddon, 11 U.S. (7 Cranch) 116, 3 L. Ed. 287 (1812)). It is particularly instructive that the FTCA and the FSIA contain nearly identical language with respect to the standard of liability to be applied when immunity has been lifted. Compare 28 U.S.C. § 1346(b)(1) (providing that United States may be liable for tortious

acts or omissions of its employees acting within the scope of their office or employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred") with 28 U.S.C. § 1606 ("As to any claim for which a foreign state is not entitled to immunity under section 1605 or section 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances . . . ."). To permit wrongful death suits against the United States under DOHSA pursuant to the waiver of immunity in the FTCA, but prohibit identical suits against *foreign* states pursuant to the analogous waiver in the FSIA, would defy logic. It would also be inconsistent with the FSIA, which was "not intended to affect the substantive law determining the liability of a foreign state or instrumentality," First Nat'l City Bank, 462 U.S. at 620, 103 S.Ct. at 2597, and the terrorism exception itself, which "does not impose liability or mention a cause of action," Cicippio-Puleo, 353 F.3d at 1034. Thus, contrary to Plaintiffs' assertion that DOHSA suits against foreign states are impermissible because Congress has not *specifically* singled out foreign states as potential defendants under the Act, it is unsurprising and entirely appropriate that Congress did not speak to DOHSA when it passed the FSIA in 1976 or when it added the terrorism exception in 1996.

The Court's conclusion that a foreign state may be sued under DOHSA finds further support in this Circuit's precedent interpreting the Act. In Gerding v. Republic of France, 943 F.2d 521 (4th Cir. 1991), personal representatives of a passenger who became ill and died aboard a French vessel off the Canary Islands sued the Republic of France, and French officials and agencies, under DOHSA and other statutes. Id. at 523-24. The Fourth Circuit affirmed the district court's finding that France was immune from suit under the FSIA without considering

what law to apply and without giving any indication one way or the other as to whether DOHSA could apply to a foreign state. In Boykin v. Bergesen D.Y. A/S, 835 F. Supp. 274 (E.D. Va. 1993) (Morgan, J.), this Court found that a Chinese corporation called China Steel was not entitled to immunity under the FSIA for the death of a merchant ship's master killed by a methane explosion on the high seas, and awarded pecuniary damages under DOHSA. Id. at 287 n.20. The Court added in a footnote, "Assuming *arguendo* that China Steel qualifies as a foreign state under the FSIA," it was still subject to suit under the waiver and commercial activity exceptions to the FSIA, 28 U.S.C. § 1605(a)(1) & (2)), suggesting that the DOHSA claim could proceed against China Steel even if it were a "foreign state" under the FSIA.

Plaintiffs' arguments as to why foreign states are not "persons" are not persuasive. The cases they cite construing the term "person" as used in the Due Process Clause and other statutes deal with plainly different circumstances. See, e.g., Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 96 (D.C. Cir. 2002) (holding that foreign state is not a "person" for purposes of the Due Process Clause). Moreover, Plaintiffs overlook that the Supreme Court has held that a foreign state may be a "person" under the Clayton Act even though the statute does not clearly define the term "person." See Pfizer, Inc. v. Gov't of India, 434 U.S. 308, 320, 98 S.Ct. 584, 591-92, 54 L. Ed. 2d 769 (1978). As the Court noted in Pfizer, the "word 'person,' is not a term of art with a fixed meaning wherever it is used" and "this Court has expressly noted that use of the word 'person' in the Sherman and Clayton Acts did not create a 'hard and fast rule of exclusion' of governmental bodies." Id. at 315-16, 98 S.Ct. at 589 (citing United States v. Cooper Corp., 312 U.S. 600, 604-05, 61 S.Ct. 742, 743, 85 L. Ed. 1071 (1941), superceded by

statute, 15 U.S.C. § 15a).[16]

The only terrorism exception case to which Plaintiffs cite for the proposition that DOHSA does not apply to foreign states, Alejandre v. Republic of Cuba, 996 F. Supp. 1239 (D.D.C. 1997), is likewise unavailing. Alejandre involved an action against the Republic of Cuba under the terrorism exception arising out of the Cuban Air Force's shooting down of two civilian planes over international waters in the Straits of Florida, which killed three United States nationals. Id. at 1242-47. Plaintiffs argue that Alejandre "would appear to be a case where DOHSA would apply if Sudan's contentions were correct" because the death occurred on the "high seas" under the Act. Pls.' Supp. Mem. at 3. Although the court did not apply DOHSA in Alejandre, this is because the opinion was issued several years before the D.C. Circuit's opinion in Cicippio-Puleo, and was grounded in the now-defunct assumption that § 1605(a)(7) provided a freestanding cause of action against state sponsors of terrorism. Not surprisingly in light of this fact, the post-Cicippio-Puleo issue of what substantive law to apply was never even raised.

For these reasons, the Court FINDS that DOHSA is among the sources of law that may be invoked against a foreign state under § 1605(a)(7) of the FSIA, that Plaintiffs have met the requirements of DOHSA in this suit against Sudan, and that Sudan is liable to Plaintiffs under DOHSA for the wrongful deaths of the seventeen sailors killed aboard the Cole.

### 3.     Maritime Wrongful Death and Intentional Infliction Claims

---

[16]The only case cited by Plaintiffs which remotely discusses whether foreign states may be sued under DOHSA, Nejad v. United States, 724 F. Supp. 753 (C.D. Cal. 1989), involved a suit against the United States and its contractors—not a *foreign* government. Moreover, though Nejad does state, "It is not disputed that, if a claim can be maintained, DOHSA provides the jurisdictional basis as against the *non-government defendants*," id. at 756 (emphasis added), this sentence, which is not elaborated upon in the opinion, cannot reasonably be read to mean that DOHSA does *not* provide a cause of action against a governmental defendant.

The Court next turns to Plaintiffs' argument that DOHSA does not preclude them from also bringing claims for wrongful death under the general maritime basis for recovery recognized in Moragne, and for intentional infliction of emotional distress under Virginia law. Plaintiffs assert that because no court has ever ruled that DOHSA's rules on damages apply to foreign states, the Court has a clean slate upon which to write. Plaintiffs contend that despite the plain language of DOHSA it would be unfair to limit their damages to pecuniary losses in light of prior cases against state sponsors of terrorism that awarded damages for emotional distress and other non-pecuniary losses. In Plaintiffs' view, DOHSA should not be construed to benefit a state sponsor of terrorism simply because the decedents happened to die on the high seas, and to hold otherwise would defeat the purpose of the terrorism exception. As a fallback argument, Plaintiffs contend that their claim for IIED is not preempted by DOHSA because it is not a "wrongful death" claim brought on behalf of the decedents, but rather a "separate" claim for Plaintiffs' own emotional distress experienced upon learning of the attack against the Cole.

Plaintiffs' arguments are unavoidably foreclosed by the plain text of DOHSA and the Supreme Court case law interpreting it. Section 762 of DOHSA provides that damages are limited to the "pecuniary loss sustained by the persons for whose benefit the suit is brought." § 762. DOHSA thus limits compensation "to prospective and material loss for the relief of others than the decedent—to reimbursement for the post-death, 'pecuniary' deprivation of his dependents." United States v. S.S. Washington, 172 F. Supp. 905, 908 (D. Va. 1959). The Supreme Court has held that survivors of a person killed on the high seas may not supplement the remedy under DOHSA with an action for loss of society damages, Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 624-25, 98 S.Ct. 2010, 2014-15, 56 L. Ed. 2d 581 (1978), or a

39

claim under a state's wrongful death statute for non-pecuniary damages. Tallentire, 477 U.S. at

232, 106 S.Ct. at 2499 (holding that Louisiana wrongful death statute was preempted by

DOHSA). The Court has also held that survival claims brought by a decedent's estate for pre-

death pain and suffering are precluded by DOHSA. Dooley v. Korean Air Lines Co., Ltd., 524

U.S. 116, 122-24, 118 S.Ct. 1890, 1894-95, 141 L. Ed. 2d 102 (1998). The Court based each of

these holdings on the principle that DOHSA

> announces Congress' considered judgment on such issues as the beneficiaries,
> the limitations period, contributory negligence, survival, and damages . . . . The
> Act does not address every issue of wrongful-death law, . . . but when it does
> speak directly to a question, the courts are not free to 'supplement' Congress'
> answer so thoroughly that the Act becomes meaningless.

Higginbotham, 436 U.S. at 625, 98 S.Ct. at 2015 (finding that loss-of-society damages could not

be recovered by dependents of a longshoreman killed on the high seas).

That this case involves terrorism, and that it is against a foreign state sponsor of

terrorism, does not overcome the fact that DOHSA is an exclusive remedy. As the Supreme

Court has stated, Congress has "struck the balance for us. It has limited survivors to recovery of

their pecuniary losses." Id. at 623, 98 S.Ct. at 2014. And as the Court noted in Dooley, "By

authorizing only certain surviving relatives to recover damages, and by limiting damages to the

pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for

deaths that occur on the high seas" and therefore "has precluded the judiciary from enlarging

either the class of beneficiaries or the recoverable damages" under DOHSA. 524 U.S. at 123,

118 S.Ct. at 1894-95. The Court's creation of a terrorism exception to DOHSA would not only

be contrary to the text of DOHSA, it would also undermine Congress' purpose of enacting a

uniform statutory remedy for wrongful death on the high seas. See Yamaha Motor Corp., U.S.A.

v. Calhoun, 516 U.S. 199, 215, 116 S.Ct. 619, 628, 133 L. Ed. 2d 578 (1996) (stating in reference to DOHSA, "When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided.").[17] Contrary to Plaintiffs' contention that the issue is open for judicial interpretation, "Congress has spoken directly to the question of recoverable damages on the high seas," Miles v. Apex Marine Corp., 498 U.S. 19, 31, 111 S.Ct. 317, 325, 112 L. Ed. 2d 275 (1990) (citing Higginbotham, 436 U.S. at 625, 98 S.Ct. at 2015), and this Court is in no position to rewrite the statute. See also Dooley, 524 U.S. at 124, 118 S.Ct. at 1895 ("Congress has spoken on . . . the losses to be recovered, and the beneficiaries, in cases of death on the high seas[.]").[18]

The Court is well aware that other plaintiffs in other cases brought under the terrorism exception have recovered damages that exceed those available under DOHSA. But in every one of those cases following Cicippio-Puleo the plaintiffs' damages were determined according to

---

[17]Plaintiffs' Supplemental Memorandum offers two cases, but neither addresses the issue here, i.e. whether DOHSA preempts state-law claims for IIED. See Wallis v. Princess Cruises, 306 F.3d 827, 842 n.5 (9th Cir. 2002) (finding that the court does "not need to reach Princess' alternative argument that the claim is preempted by DOHSA"); Cummings v. Holland Am. Line Westours, 1999 A.M.C. 2282, 1999 WL 1293577 at *3 (W.D. Wash. 1999) (dismissing negligent infliction of emotional distress claim "does not affect" IIED claims). In fact, one court has noted that DOHSA preempts a separate action for negligent infliction of emotional distress. See Howard v. Crystal Cruises, Inc., 1992 A.M.C. 1645, 1654, 1992 WL 194659 (E.D. Cal. 1992).

[18]Because DOHSA is an exclusive remedy, the Court need not decide whether Plaintiffs may pursue a claim against Sudan based on the maritime remedy in Moragne. However, it bears noting that Plaintiffs have offered no support for the proposition, implicit in their Fourth Amended Complaint, that Moragne, which held that general maritime law provided a cause of action for wrongful death in U.S. state territorial waters, see 398 U.S. at 409, 90 S.Ct. at 1792, should be extended to this case, which involved deaths in the territorial waters of Yemen.

the applicable substantive law, which is precisely what 28 U.S.C. § 1606 of the FSIA requires. See Blais, 459 F. Supp. 2d at 58 (holding that plaintiffs "are entitled to the typical bases of damages that may be awarded against tortfeasors under the laws of Florida and Virginia"); Greenbaum v. Islamic Republic of Iran, 451 F. Supp. 2d 90, 105 (D.D.C. 2006) (awarding "typical array of damages" under California law); Price, 384 F. Supp. 2d at 134 ("Because section 1606 of the FSIA provides that a 'foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances,' 28 U.S.C. § 1606, plaintiffs are entitled to the typical array of compensatory damages that may be awarded against tortfeasors in Texas and California . . . ."); see also Bettis v. Islamic Republic of Iran, 315 F.3d 325, 333 (D.C. Cir. 2003) (noting that § 1606 empowers judges to "find the relevant law, not to make it"). Plaintiffs' theory that family members of victims of terrorism are themselves victims may be true as a factual matter, but, unfortunately, as a legal matter it does not circumvent the Supreme Court's holdings on DOHSA. Plaintiffs assert that Beaty v. Republic of Iraq, 480 F. Supp. 2d 60 (D.D.C. 2007), "holds that the families of those affected by terrorism are direct victims entitled to assert independent claims" for IIED. Pls.' Supp. Authority at 1. However, Beaty's discussion of the victims of terrorism related to the "presence" requirement in IIED claims brought under the terrorism exception to the FSIA, and had nothing to do with the preemption issue raised by DOHSA. 480 F. Supp. 2d at 93-94. Applying DOHSA's damages provisions along with the cause of action provided in DOHSA is perfectly consistent with the FSIA and the terrorism exception.

The Court sympathizes greatly with Plaintiffs, who continue to suffer terribly years after their loved ones died. But the Court is bound to follow the legal precedent before it. Congress

makes the laws; courts merely interpret them. Whether to amend DOHSA to allow more liberal recovery in cases of death caused by terrorism on the high seas, as Congress did in 2000 for cases of commercial aviation accidents on the high seas, is a question for Congress alone.[19] Accordingly, Plaintiffs' IIED and maritime wrongful death claims are **DISMISSED** for failure to state a claim upon which relief can be granted.

### 4.     Statute of Limitations

The Court need not spend long on Sudan's argument that Plaintiffs' Complaint was not filed within DOHSA's three-year statute of limitations. See 46 U.S.C. app. § 763a. While the FSIA is silent with respect to the appropriate statute of limitations to be applied in cases brought under exceptions other than § 1605(a)(7), it singles out the terrorism exception as meriting a ten-year limitations period. 28 U.S.C. § 1605(f) provides:

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

28 U.S.C. § 1605(f). The D.C. district court has interpreted § 1605(f) as having a preemptive effect on other statute of limitations periods. See Owens v. Republic of Sudan, 412 F. Supp. 2d 99, 117 (D.D.C. 2006) (holding that state statute of limitations periods are "irrelevant" to lawsuits brought under terrorism exception); Wyatt v. Syrian Arab Republic, 398 F. Supp. 2d 131, 143 (D.D.C. 2005). Indeed, a necessary corollary of Congress' power to decide the circumstances under which foreign states may be sued is the authority to determine *when* causes

---

[19]Congress amended DOHSA to allow "additional compensation for nonpecuniary damages" in commercial aviation accidents on the high seas beyond twelve nautical miles from the shore of any State. Pub. L. 106-181, § 404(a)-(b), 114 Stat. 61 (2000) (codified at 46 U.S.C. app. §§ 761(b) & 762 (b)(1) and repealed and recodified at 46 U.S.C. § 30307).

of action may be commenced against foreign states. See id. ("[W]hile Congress may choose to waive a foreign state's immunity and allow causes of action to be brought against it 'in the same manner and to the same extent as a private individual under like circumstances,' 28 U.S.C. § 1606, it is not therefore stripped of its authority to require its own statute of limitations to apply in cases against foreign states as a *condition* of that waiver."). Contrary to Sudan's argument that applying the ten-year period instead of a shorter one would "enlarge a substantive cause of action contrary to the intent of Congress," Def. Mot. Dismiss 17, the ten-year period is exactly what Congress intended to apply in cases under § 1605(a)(7). Accordingly, the Court concludes that the ten-year statute of limitations under § 1605(f) applies, and that Plaintiffs' Complaint, which was filed on July 16, 2004, was timely filed.

## III.  DAMAGES

"No section of the FSIA directly addresses the quantum of proof for damages." Hill v. Republic of Iraq, 328 F.3d 680, 683 (D.C. Cir. 2003). However, consistent with 28 U.S.C. § 1606, an "FSIA default winner must prove damages 'in the same manner and to the same extent' as any other default winner." Id. at 683-84 (citing § 1606).

DOHSA provides that recovery in a suit brought under the Act "shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought." 46 U.S.C. app. § 762. Pecuniary losses may include loss of support, loss of the services of the deceased, loss of nurture, guidance, care and instruction, loss of inheritance, and funeral expenses if paid by the dependents. Boykin, 835 F. Supp. at 285 (citing Thomas J. Schoenbaum, Admiralty and Maritime Law, § 7-2 (1987)).

The Court, relying upon the seventeen decedents' income taxes and other evidence, has

calculated the pecuniary losses of each Plaintiff entitled to recover under DOHSA, i.e. those who are the "wife, husband, parent, child, or dependent relative" of one of the seventeen decedents. 46 U.S.C. app. § 761. Parents, even if non-dependent, may recover for the wrongful death of a child under § 761. Wahlstrom v. Kawasaki Heavy Indus., Ltd., 4 F.3d 1084, 1090 (2d Cir. 1993). Brothers or sisters of the decedents, however, must prove dependency, as well as pecuniary loss, to recover under the Act. Evich v. Connelly, 759 F.2d 1432, 1433 (9th Cir. 1985) ("Siblings must prove their dependency in order to bring a DOHSA action."). For dependency to exist, "'there must be a legal or voluntarily created status where the contributions are made for the purpose and have the result of maintaining or helping to maintain the dependent in his customary standard of living.'" Oldham v. Korean Air Lines Co., Ltd., 127 F.3d 43, 51 (D.C. Cir. 1997) (quoting Petition of United States, 418 F.2d 264, 272 (1st Cir. 1969) & United States Fid. & Guar. Co. v. Britton, 188 F.2d 674, 675 (D.C. Cir. 1951)). The Plaintiff-siblings of the decedents in this case have not alleged that they were dependent on the decedents, and the evidence is clear that no such dependency existed. Thus, unfortunately, the Plaintiff-siblings may not recover under DOHSA. Plaintiff Novella Wiggins, who was engaged to be married to decedent James McDaniels, is likewise not a beneficiary under DOHSA, since she is neither a spouse nor a dependent "relative" within the meaning of the statute.[20]

Awards under DOHSA are gauged by the reasonable expectation of pecuniary benefits which would have flowed from the continued life of the decedent. See, e.g., The S.S. Black Gull, 90 F.2d 619, 620-21 (2d Cir. 1937); see generally Benedict on Admiralty at § 7-53. To

---

[20]Moreover, Plaintiffs' allegations that Freddie Triplett is a disabled dependent of decedent Andrew Triplett are not supported by the record. (Tr. 47:9-18; Ex. 141 at 7.)

45

calculate lost earnings that would have been available for contribution had the decedent lived, the Court multiplied each decedent's earnings at the time of death by the number of years that the decedent likely would have worked, assuming various annual rates of wage growth that depend on the decedent's education level and including non-taxable allowances paid by the Navy. The Court took into account the following factors: the amount of time each sailor would have likely stayed in the Navy; the retirement age and age of death; the savings rate; the amount the decedent would have used for his or her own consumption; the taxes he or she would have paid; and the decedent's estate from which children had a reasonable expectation of benefitting. See, e.g., Solomon v. Warren, 540 F.2d 777, 786-95 (5th Cir. 1976); Cox v. Nw. Airlines, Inc., 379 F.2d 893, 896 (7th Cir. 1967); Boykin, 835 F. Supp. at 286; In re the Adventure Bound Sports, Inc., 858 F. Supp. 1192, 1197-1211 (S.D. Ga. 1994). As is required, the future lost earnings were reduced to their "present value" through the use of a discount rate. See Brown v. United States, 615 F. Supp. 391, 395 (D. Mass. 1985). The lost earnings were apportioned among the decedents' eligible surviving family members, with minor children receiving benefits until the age of majority. See 42 U.S.C. app. § 762 (recovery shall be apportioned among persons for whose benefit suit is brought in proportion to loss they may severally have suffered by reason of decedent's death). For those decedents who left children, the Court will award the pecuniary value of the loss of nurture, care, and guidance to each child until he or she reaches the age of twenty-one. See Boykin, 835 F. Supp. at 286. Although it gives the Court no pleasure to do so, it refuses Plaintiffs' request for damages for loss of consortium, loss of solatium, loss of society, mental anguish and emotional distress, because, as emphasized earlier, each of these is non-pecuniary in nature and consequently cannot be recovered under DOHSA. See 46 U.S.C.

app. § 762; Boykin, 835 F. Supp. at 285.

The Court **FINDS** that Sudan is liable for the following damages for the pecuniary losses suffered by the following individuals:

### Family of Kenneth Eugene Clodfelter

1. Jennifer Clodfelter (spouse): $296,631

2. Jennifer Clodfelter as next friend of Noah Clodfelter (son): $201,831

3. John Clodfelter (father): $0

4. Gloria Clodfelter (mother): $0

### Family of Richard Costelow

1. Sharla Costelow (wife): $549,658

2. Sharla Costelow as next friend of Ethan Costelow (son): $235,309

3. Sharla Costelow as next friend of Brady Costelow (son): $213,369

4. George Costelow (father): $0

5. Dorothy Costelow (mother): $0

### Family of Lakeina Monique Francis

1. Ronald Wallace Francis (father): $104,648

2. Sandra Annette Francis (mother): $104,648

### Family of Timothy Lee Gauna

1. Sarah Gauna-Esquivel (mother): $269,898

### Family of Cherone Louis Gunn

1. Louge Gunn (father): $136,310

2. Mona Gunn (mother): $136,310

3.    Jason Gunn (brother): $0

4.    Jamal Gunn (brother): $0

5.    Anton J. Gunn (brother): $0

## Family of James Rodrick McDaniels

1.    Novella Wiggins as next friend of James Rodrick McDaniels, Jr. (son): $329,162

2.    Novella Wiggins (fiancée): $0

3.    Diane McDaniels (mother): $212,588

4.    Frederica McDaniels (sister): $0

## Family of Marc Ian Nieto

1.    Jesse Leroy Nieto (father): $362,411

## Family of Ronald Scott Owens

1.    Jamie Owens (wife): $271,210

2.    Jamie Owens as next friend of Isabella Marie Owens (daughter): $189,177

## Family of Lakiba Nicole Palmer

1.    Kenyon Embry as next friend of Capri Kumar (daughter): $267,556

2.    Teresa Smith (mother): $261,820

3.    Kenyon Embry (brother): $0

## Family of Joshua Langdon Parlett

1.    Leroy Parlett (father): $117,418

2.    Etta Parlett (mother): $117,418

3.    Kera Miller (sister): $0

4.    Hannah Parlett (sister): $0

5.     Matthew Parlett (brother): $0

### Family of Patrick Howard Roy

1.     Kate Brown (mother): $234,835

2.     Sean Walsh (brother): $0

3.     Kevin Michael Roy (brother): $0

### Family of Kevin Shawn Rux

1.     Olivia Rux (wife): $471,327

### Family of Ronchester Mananga Santiago

1.     Rogelio Santiago (father): $157,708

2.     Simeona Santiago (mother): $157,708

### Family of Timothy Lamont Saunders

1.     Jacqueline Saunders (wife): $368,126

2.     Jacqueline Saunders as next friend of Isley Gayle Saunders (daughter): $147,666

3.     Jacqueline Saunders as next friend of Jocelyn Tiera Saunders (daughter): $177,380

### Family of Gary Graham Swenchonis

1.     Gary G. Swenchonis (father): $141,175

2.     Deborah Swenchonis (mother): $142,375

3.     Shalalah Swenchonis-Wood (sister): $0

### Family of Andrew Triplett

1.     Lorrie D. Triplett (wife): $781,465

2.     Lorrie D. Triplett as next friend of Andrea Triplett (daughter): $220,561

3.  Lorrie D. Triplett as next friend of Savannah R. Triplett (daughter): $271,668

4.  Reed Triplett (father): $0

5.  Savannah Triplett (mother): $0

6.  Kevin Triplett (brother): $0

7.  Wayne Triplett (brother): $0

8.  Freddie Triplett (brother): $0

9.  Theodis Triplett (brother): $0

**Family of Craig Brian Wibberly**

1.  Thomas Wibberly (father): $153,489

2.  Patricia Wibberly (mother): $153,489

3.  Toni Wibberly (sister): $0

## IV. CONCLUSION

Plaintiffs have established satisfactory evidence, pursuant to 28 U.S.C. § 1608(e), that Sudan is liable for its provision of material support and resources to Al Qaeda that enabled the terrorist group to bring about the extrajudicial killing of seventeen honorable American servicemen and women on October 12, 2000.

We have heard testimony from, and about, those family members who have suffered from the loss of these young men and women. The psychological effects on the survivors can never be erased, especially given that they were caused by a senseless act deliberately enabled by a rogue government. It is depressing to realize that a country organized on a religious basis with religious rule of law could and would execute its power for purposes which most countries would find intolerable and loathsome. It is a further tragedy that the laws of the United States, in

this instance, provide no remedy for the psychological and emotional losses suffered by the survivors.

For the reasons set forth herein, it is hereby **ORDERED** that judgment be entered in favor of Plaintiffs and against Defendant Republic of Sudan in the amounts set forth above. The judgments against Defendant total $7,956,344. Defendant shall pay post-judgment interest at the applicable post-judgment federal rate from today's date until paid in full.

The Clerk of the Court is **DIRECTED** to transmit a copy of this Order to all counsel of record via United States mail. The Clerk shall cause a copy of this Order and Opinion and accompanying judgment to be translated into Arabic and transmitted to the United States Department of State for diplomatic service upon Defendant Republic of Sudan in accordance with the provisions of 28 U.S.C. § 1608(a)(4), with the costs of translation to be paid by Plaintiffs. See 28 U.S.C. § 1608(e).

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE

July 25, 2007
Norfolk, Virginia

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

51